UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| AUSTIN SMITH, | ) | |
|---|---|---|
| *Plaintiff*, | ) | Case No. 4:23-cv-25 |
| v. | ) | Judge Atchley |
| C3 PRESENTS, LLC, | ) | Magistrate Judge Dumitru |
| *Defendant*. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Austin Smith tripped and fell over a tent line at the 2022 Bonnaroo Music Festival. He suffered injuries and filed this premises liability lawsuit against Defendant C3 Presents, LLC. Now before the Court is Defendant's Motion for Summary Judgment [Doc. 31]. For the reasons explained below, Defendant's motion will be **DENIED**.

### I. FACTUAL BACKGROUND

Each year, thousands travel to Manchester, Tennessee, for the Bonnaroo Music Festival. Defendant C3 Presents, LLC produces the Bonnaroo Music Festival. The outdoor festival spans multiple days, and many attendees camp overnight in tents. To enhance their experiences, attendees can purchase VIP tickets and camp in a designated VIP campground. [Doc. 34-2 at 27]. The VIP campground includes a "VIP Lux" area. [*Id.*]. VIP Lux offers attendees pre-pitched, "darkroom" tents for camping. [*Id.* at 28]. These darkroom tents, with their gray and black exterior, are designed to prevent sunlight from entering inside. [*Id.* at 29]. Rain guards overlay the darkroom tents, and the rain guards are secured to the ground with black tent lines, or paracords, that extend approximately five feet from the body of each tent. [*Id.* at 37; Doc. 31-2 at 5]. The darkroom tents themselves are also staked to the ground. [Doc. 31-2 at 5–6].

Defendant did not set up the darkroom tents itself. Instead, Defendant hired Stout Tent to do so as an independent contractor. [Doc. 34-2 at 29–30]. Stout Tent finished setting up the darkroom tents three or four days before the festival began. [*Id.* at 55]. The darkroom tents were arranged into four rectangular grids, with ten feet of space between each grid and a sixty-foot fire lane. [Doc. 31-2 at 5]. Within each grid, approximately six feet of space separated one darkroom tent from the next. [*Id.*]. After Stout Tent erected the darkroom tents, Defendant's employees continually scanned the area for tripping hazards. [Doc. 34-2 at 48, 78].

The 2022 edition of Bonnaroo began on June 16th. Plaintiff attended the festival as a VIP ticketholder. [Doc. 34-1 at 134]. He did not camp in the VIP Lux area, instead opting for the nearby VIP car camping area. [*Id.* at 138]. Plaintiff nonetheless befriended attendees who were camping in the VIP Lux area. [*Id.* at 147]. On June 18th, Plaintiff and his new friends ate dinner and decided to head into the main festival area together to catch the night's shows. [*Id.*]. The group was "trying to hurry" because the shows were starting soon, but they had to stop by the VIP Lux area first to meet up with a friend who was camping there. [*Id.* at 147–48, 155].

Plaintiff and his friends were ready to go around 7:45 p.m. [Doc. 31-2 at 3]. To head towards the main festival area, Plaintiff followed two of his friends, who walked in between two of the darkroom tents. [Doc. 34-1 at 149–50]. Plaintiff followed them with a beer in hand—his first one of the night. [*Id.* at 148]. Just as the two friends turned back to warn Plaintiff of the tent lines, he tripped and fell over one of them. [*Id.* at 150]. Plaintiff suffered a broken elbow and shoulder. [*Id.* at 152]. He attributes his injuries to Defendant's negligence. When walking between the darkroom tents, Plaintiff thought he was following an official pathway based on the gap between each tent and the fact that nothing was marked off. [*Id.* at 242–43]. Moreover, the black tent lines lacked any reflective material, and the area had inadequate lighting. [*Id.* at 157, 335].

Defendant retained an expert who disagrees with Plaintiff's theories of negligence. Forensic Engineer David Johnson opines that the natural lighting at the time of Plaintiff's pre-sunset, 7:45 p.m. fall "should have been sufficient" for him to have seen the black tent lines. [Doc. 31-2 at 7]. Johnson adds that the angles used for the tent tiedowns complied with industry standards, and the designated pathways for attendees were "substantial and clear." [*Id.* at 8]. There was no reason, according to Johnson, for Plaintiff to travel between the darkroom tents rather than along the ten-foot wide pathways between the grids or the sixty-foot fire lane. [*Id.* at 5–6].

## II. STANDARD OF REVIEW

"Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Sommer v. Davis*, 317 F. 3d 686, 690 (6th Cir. 2003) (citing FED. R. CIV. P. 56(c)). The moving party may satisfy its burden by producing evidence that demonstrates the absence of a genuine issue of material fact or "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## III. ANALYSIS

Defendant seeks dismissal of Plaintiff's premises liability claim. It advances several arguments in support of the request, including that it owed no duty to Plaintiff, breached no duty to Plaintiff, and was less at fault than Plaintiff. The Court will address each argument below.

3

### A. Duty of Care

To succeed on a premises liability claim, "a plaintiff must present prima facie evidence of the customary elements of negligence." *Binns v. Trader Joe's East, Inc.*, 690 S.W.3d 241, 254 (Tenn. 2024) (quoting *Est. of Smith v. Highland Cove Apartments, LLC*, 670 S.W.3d 305, 313 (Tenn. Ct. App. 2023)). Those customary elements include duty, breach, causation, and damages. *Est. of Smith*, 670 S.W.3d at 313. Regarding duty, owners or occupiers of land owe a duty "to remove or warn against 'any dangerous condition on the premises of which the property owner is actually aware or should be aware through the exercise of reasonable diligence.'" *Id.* (quoting *Hixson v. Am. Towers, LLC*, 593 S.W.3d 699, 716 (Tenn. Ct. App. 2019). Courts will deem a condition dangerous "if it is reasonably foreseeable that the condition could probably cause harm or injury and that a reasonably prudent property owner would not maintain the premises in such a state." *Ellis v. Snookums Steakhouse, LLC*, No. W2024-01165-COA-R3-CV, 2025 WL 779588, at *3 (Tenn. Ct. App. Mar. 11, 2025) (citation omitted). If there is no evidence of a dangerous condition, there can be no premises liability. *Nee v. Big Creek Partners*, 106 S.W.3d 650, 654 (Tenn. Ct. App. 2002).

#### 1. Dangerous Condition

Defendant contends that the tent lines did not constitute a dangerous condition, which means that it owed no duty to Plaintiff and cannot be held liable. [Doc. 32 at 12]. At the outset, the Court notes that negligence cases like this one are generally "not amenable to disposition on summary judgment." *Steele v. Primehealth Med. Ctr., P.C.*, No. W2015-00056-COA-R3-CV, 2015 WL 9311846, at *4 (Tenn. Ct. App. Dec. 22, 2015). This reminder proves particularly helpful where, as here, the question of duty presents a very close call. Because factual disputes remain as to the existence of a dangerous condition, the Court must leave this issue for the jury to resolve.

4

The Tennessee Court of Appeals' decision in *Basily v. Rain, Inc.* proves instructive on this point. In that case, the plaintiff tripped over a raised sprinkler head positioned at the intersection of two sidewalks. *Basily v. Rain, Inc.*, 29 S.W.3d 879, 882 (Tenn. Ct. App. 2000). The sprinkler head was designed to protrude three to four inches above ground when operating and return to ground level when dormant. *Id.* at 881. When the plaintiff tripped over the sprinkler head, it was not operating but nonetheless stood in its above-ground position. *Id.* at 882. The trial court concluded that the raised sprinkler head did not create a dangerous condition and granted summary judgment to the defendants. *Id.*

The Tennessee Court of Appeals disagreed. When not operating and in its ground level position, the sprinkler head was not dangerous. *Id.* at 884. But the same could not be said "for the sprinkler in its operating position" three to four inches above ground. *Id.* "In light of its narrow cylindrical shape, its dark color, and its proximity to the intersection of the two sidewalks, it is certainly foreseeable that it would go unnoticed by a passerby," the court reasoned, when not operating and positioned three to four inches above ground. *Id.* *Basily* makes clear that the same condition may be dangerous in one setting but not in another.

A jury could reach the same conclusion here. The tent lines, when viewed in isolation, may not be dangerous. This conclusion, however, fails to consider the specific context in which Plaintiff encountered the tent lines. Plaintiff tripped over a tent line while walking between two darkroom tents, which he thought was an official path based on the distance between the tents and the lack of signage to the contrary. [Doc. 34-1 at 242–43]. Defendant's expert asserts that the areas between tents should not have been confused for an official path, but these competing characterizations present a factual dispute for the jury to resolve. The same is true of Plaintiff's suggestion that the area lacked adequate lighting. [*Id.* at 335].

5

The *Basily* court emphasized that the sprinkler head's narrow shape, dark color, and specific location could render it dangerous. So too here. When viewing the evidence in the light most favorable to Plaintiff, as the Court must, a jury could conclude that the non-reflective, black tent lines could foreseeably "go unnoticed by a passerby" traveling along an inadequately lit path that ostensibly looked like an official walkway. *Basily*, 29 S.W.3d at 884. Because a reasonable jury could find that Plaintiff encountered a dangerous condition, Defendant is not entitled to summary judgment on this ground.

Defendant resists this conclusion, relying heavily on the Tennessee Court of Appeals' unpublished decision in *Steele v. Primehealth Medical Center, P.C.* There, the plaintiff, a delivery man, tripped and fell after stepping off an unmarked drop-off on a sidewalk outside the defendants' business. *Steele*, 2015 WL 9311846, at *1. The plaintiff testified that he would have avoided the fall had the area of the sidewalk been marked with paint or a warning sign. *Id.* at *8–9. The defendants' expert countered that nothing in the building code required marking or striping of sidewalks, and the sidewalk at issue complied with the building code applicable at the time of its construction. *Id.* at *8.

On that record, the trial court granted summary judgment to the defendants, and the Tennessee Court of Appeals affirmed. *Id.* at *9–10. Because the defendants demonstrated that the sidewalk complied with applicable building codes and that no other trip and falls had occurred there, the plaintiff could not create a material factual dispute "by simply pointing to the photographs of the location and [his] testimony" that markings were needed. *Id.* at *10. "The paucity of evidence" would have required a jury to speculate before it could characterize the sidewalk as a dangerous condition. *Id.* at *9. With insufficient evidence of a dangerous condition, the defendants were entitled to summary judgment on the premises liability claim. *Id.* at *10.

6

Defendant urges that this case is exactly like *Steele*. Just as the expert in *Steele* indicated that the sidewalk complied with the building codes, Defendant's expert explains that the darkroom tents were properly tied down to provide optimum holding power and complied with the 2004 IFAI Procedural Handbook for the Safe Installation and Maintenance of Tentage. [Doc. 31-2 at 5]. This framing suggests similarities between the two cases, but a closer examination reveals that the conclusions of Defendant's expert are not as dispositive as those in *Steele*.

The *Steele* plaintiff's sole contention was that the sidewalk should have been painted or marked, and the defendants' expert refuted that contention through reference to the building codes. Here, Defendant's expert similarly cites industry standards to suggest the darkroom tents were properly tied down, but Plaintiff's sole contention is not that the tents were improperly tied down. He does not argue that he fell because the tents were tied down to maintain optimum holding power. Instead, he points to the location of the tent lines, in what he thought was an official walkway, and the supposedly inadequate lighting in the area. On these issues, Defendant's expert does not cite to industry standards or building codes to rebut Plaintiff's perceptions. He instead states his own opinions that the lighting was adequate and that the areas between the tents did not resemble official pathways. These competing views are for a jury to resolve, not the Court. The nature of the expert's opinion in this case renders it distinguishable from *Steele*.

Defendant's arguments on the dangerous condition issue do not end with *Steele*. To the contrary, Defendant advances a separate but related argument that the tent lines did not present an unreasonable risk of harm. [Doc. 32 at 15]. If a condition does not pose an unreasonable risk of harm, no duty of care attaches. *Psillas v. Home Depot, U.S.A., Inc.*, 66 S.W.3d 860, 865 (Tenn. Ct. App. 2001). "A risk of harm is unreasonable if the foreseeable probability and gravity of the harm outweigh the burden imposed on the defendant to engage in alternative conduct that would have

7

prevented the harm." *Id.* Courts will deem a risk of harm unreasonable where a risk of serious injury exists and the necessary avoidance measures are slight. *Basily*, 29 S.W.3d at 884 (holding that the risk of harm from a sprinkler head that failed to retract was unreasonable because correcting the problem was "a relatively simple matter" and could be solved simply by pushing down on the sprinkler head with one's hand or foot); *but see Parker v. Holiday Hosp. Franchising, Inc.*, 446 S.W.3d 341, 352 (Tenn. 2014) (holding that "dismantling the exterior sheetrock wall" to discover a defectively installed shower bench was "far beyond the parameters of what the duty of reasonable care requires of property owners").

As the Court already held, a jury could conclude that it was foreseeable for an individual to trip over the relevant tent lines. And it is certainly foreseeable that one who trips over tent lines could seriously injure themselves, just as Plaintiff did in breaking his elbow and shoulder. *Basily*, 29 S.W.3d at 884. What corrective measures could have abated this risk of harm? Plaintiff testified that the area where he tripped looked like an official walkway but was not marked off, so perhaps Defendant could have roped off the areas between tents or posted signs directing attendees to use other walkways. This alternative conduct may not be as simple as pushing a sprinkler head down, but it also does not appear as burdensome as tearing down a wall to discover a defectively installed shower bench. On this record, the Court declines to grant Defendant summary judgment on grounds that the tent lines did not present an unreasonable risk of harm.

### 2. Creation of Condition and Constructive Notice

Recall that plaintiffs must prove the four customary elements of negligence to succeed on a premises liability claim. *Parker*, 446 S.W.3d at 350. Tennessee courts have often stated that in addition to proving those four elements, plaintiffs must establish either that "the condition was caused or created by the owner, operator, or his agent," or "if the condition was created by someone

8

other than the owner, operator, or his agent, that the owner or operator had actual or constructive notice that the condition existed prior to the accident." *Id.* (quoting *Blair v. West Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004)). The Tennessee Supreme Court recently clarified, however, that issues of actual and constructive notice are "most appropriately analyzed as part of the duty element of negligence" rather than as separate elements to be proved. *Trentham v. Mid-America Apartments, LP*, 705 S.W.3d 151, 161 n.9 (Tenn. 2025). Semantics aside, the Court now turns to whether Defendant or its agent created the condition, and if not, whether Defendant had actual or constructive notice of the condition.

First, neither Defendant nor any of its agents created the condition. It is undisputed that Defendant hired Stout Tent as an independent contractor to set up the darkroom tents. That Stout Tent was an independent contractor does not mean it was Defendant's agent. The Tennessee Supreme Court made the distinction between agents and independent contractors clear more than a decade ago. In *Parker v. Holiday Hospitality Franchising, Inc.*, the plaintiffs asserted a premises liability claim against the defendant hotel after a shower bench collapsed and caused a fall. *Parker*, 446 S.W.3d at 343–44. An independent contractor installed the bench, and the plaintiffs argued that this meant the defendant hotel's agent created the dangerous condition. *Id.* at 350. The Tennessee Supreme Court disagreed. A rule equating agents with independent contractors would "destroy the distinction the law makes" between the two. *Id.* at 351.

*Parker* governs here. Simply because Stout Tent set up the tents as an independent contractor does not mean it served as Defendant's agent. Quite the opposite. *Parker* dictates that Stout Tent was not Defendant's agent when it contracted to do the work. *Id.* Because neither Defendant nor its agent created the condition, Defendant's liability depends on whether it had actual or constructive notice of the condition before Plaintiff's fall. *Id.*

9

The parties focus primarily on constructive notice, so the Court will do the same. Constructive notice is a doctrine of imputation. When an individual should have discovered a fact after proper diligence but did not, the law deems him to have constructive notice of that fact. *Trentham*, 705 S.W.3d at 162. Premises liability plaintiffs can establish a defendant's constructive notice of a dangerous condition in two primary ways. First, a plaintiff can show that the dangerous condition "existed for such a length of time that the defendant, in the exercise of reasonable care, should have become aware of the condition." *Piana v. Old Town of Jackson*, 316 S.W.3d 622, 631 (Tenn. Ct. App. 2009) (quoting *Blair*, 130 S.W.3d at 764). Second, a plaintiff can demonstrate "a pattern of conduct, a recurring incident, or a general or continuing condition indicating the dangerous condition's existence." *Id.*

Defendant focuses on the second method of proof and emphasizes that no one besides Plaintiff has tripped over the tent lines at issue. [Doc. 35 at 5]. Without any prior incidents, Defendant argues that it lacked constructive notice of any dangerous condition. Not necessarily. This particular method of proof—that there were recurring incidents and patterns of conduct—represents only one of the two primary ways to establish constructive notice. Thus, proof of a prior incident is not an absolute prerequisite to finding that a defendant had constructive notice of a dangerous condition. *Trentham*, 705 S.W.3d at 163.

Plaintiff does not point to any prior incidents involving the tent lines, so that leaves the other method for demonstrating constructive notice: proof that the dangerous condition "existed for such a length of time that the defendant, in the exercise of reasonable care, should have become aware of the condition." *Piana*, 316 S.W.3d at 631 (quoting *Blair*, 130 S.W.3d at 764). "[I]t is generally for the jury to say whether the condition causing the injury . . . had existed long enough that a reasonable man exercising reasonable care would have discovered it." *Id.* (quoting *Allison*

*v. Blount Nat'l Bank*, 390 S.W.2d 716, 719 (Tenn. Ct. App. 1965)). Factors to be considered as part of this fact-intensive inquiry include, among others, the nature of the business and the number of customers. *Allison*, 390 S.W.2d at 719.

The Court concludes that the question of Defendant's constructive notice is for the jury to decide. Stout Tent set up the darkroom tents and their tent lines three or four days before the festival began. [Doc. 34-2 at 55]. This period of time may not appear lengthy to some, but others may conclude differently when considering the type of business involved and the inherently temporary nature of a music festival. *See Friar v. Kroger Co.*, No. 03A01-9710-CV-00470, 1998 WL 170140, at *7–9 (Tenn. Ct. App. Apr. 14, 1998) (affirming jury verdict that the defendant, a grocery store, had constructive notice of a spill based on testimony that the spill remained on the floor for around ten minutes before the plaintiff fell). And Defendant's employees routinely scanned the campground for tripping hazards after Stout Tent erected the tents. [Doc. 34-2 at 78]. These inspections, when combined with the condition's multiple days of existence, could permit a jury to conclude that Defendant had constructive notice. *Petty v. City of White House*, No. M2008-02453-COA-R3-CV, 2009 WL 2767140, at *7 (Tenn. Ct. App. Aug. 31, 2009) (affirming trial court's bench trial ruling that the defendant had constructive notice of a hole the plaintiff stepped into, in part, because the employees performed inspections of the area).

### 3. Independent Contractor Duty

Even if the tent lines triggered a duty of care, Defendant contends that any such duty lies solely with Stout Tent. [Doc. 32 at 20]. Defendant supports its argument by citing to *Parker*, which, as discussed above, clarified the distinction between agents and independent contractors. *Parker*, 446 S.W.3d at 351. But *Parker* did not hold that property owners can defeat a premises liability claim simply because an independent contractor created the challenged condition. To the contrary,

11

the *Parker* court noted that an independent contractor created the condition at issue, but then proceeded to analyze whether the defendant was liable based on his actual or constructive notice of the condition. *Id.* How Tennessee courts recite a premises liability claim's elements makes clear that property owners and occupiers may be held liable even when they did not create the allegedly dangerous condition. *Piana*, 316 S.W.3d at 630–31 (noting that a plaintiff may succeed on a premises liability claim upon showing that "the owner or operator had actual or constructive notice that the condition existed," even though "the condition was created by someone other than the owner, operator, or his agent"). That an independent contractor created the condition has no bearing on whether the property owner had actual or constructive notice of its existence. For this reason, Defendant's argument misses the mark.

### B. Breach

Even assuming it owed a duty, Defendant argues that it did not breach any duty to Plaintiff. [Doc. 32 at 21]. Whether Defendant breached a duty to Plaintiff is a question of fact. *Hardeman Cnty. v. McIntyre*, 420 S.W.3d 742, 747 (Tenn. Ct. App. 2013). The parties' breach arguments overlap considerably with their arguments regarding whether the tent lines posed a dangerous condition, so the Court need not rehash them here. Needless to say, a reasonable jury could conclude, for example, that Defendant breached a duty to Plaintiff based on its failure to identify or mark off the areas between tents, which Plaintiff says looked like official pathways. The Court will allow the jury to resolve the issue of breach.

### C. Comparative Fault

Defendant's final argument is that Plaintiff cannot recover based on Tennessee's comparative fault rule. [Doc. 32 at 22]. Tennessee follows the modified comparative fault rule, which provides that "a plaintiff may recover damages where the plaintiff's fault is less than the

12

Case 4:23-cv-00025-CEA-MJD   Document 58   Filed 04/15/25   Page 12 of 15
PageID #: 1384

defendant's fault." *McNabb v. Highways, Inc.*, 98 S.W.3d 649, 652 (Tenn. 2003). Questions of comparative fault are typically reserved for the jury, but the issue can be resolved on summary judgment "in those situations where reasonable minds could only conclude that . . . the plaintiff's fault was equal to or greater than the fault of the defendant." *Green v. Roberts*, 398 S.W.3d 172, 178 (Tenn. Ct. App. 2012) (citation omitted).

Defendant relies primarily on three cases to support its argument that no reasonable jury could find Plaintiff less at fault than it was. In each of those cases, the court granted or affirmed the grant of summary judgment on comparative fault grounds, but largely because the allegedly dangerous condition obviously contrasted with its surrounding environment. *Berry v. Houchens Mkt. of Tenn., Inc.*, 253 S.W.3d 141, 148 (Tenn. Ct. App. 2007) (the plaintiff slipped on a large black puddle of oil, which she admitted was clearly distinguishable from the parking lot's gray surface); *Hatfield v. Circle K Stores, Inc.*, No. 1:17-cv-82, 2018 WL 11463581, at *13 (E.D. Tenn. Mar. 13, 2018) (the plaintiff slipped on a large black oil spill that "clearly contrasted with the pavement of the parking lot"); *Rogers v. Hobby Lobby Stores, Inc.*, No. 2:14-cv-379, 2016 WL 7799583, at *1 (E.D. Tenn. June 29, 2016) (the plaintiff tripped over a dark floor mat on a white floor). Moreover, the plaintiffs in *Berry*, *Hatfield*, and *Rogers* each acknowledged either that they were looking away or would have noticed the hazard had they looked. *Berry*, 253 S.W.3d at 148 (the plaintiff testified that she did not see the oil because she was looking ahead and never looks down when walking); *Hatfield*, 2018 WL 11463581, at *12 (the plaintiff conceded that she would have seen the oil had she looked down before falling); *Rogers*, 2016 WL 7799583, at *1 (the plaintiff testified that she could have seen the mat had she looked).

This case involves distinguishable facts. It does not concern a condition that obviously contrasted with its surrounding environment, such as a dark mat on a white floor. Instead,

13

Plaintiff's testimony suggests that the tent lines were black, lacked reflective material, and were located in an area with inadequate lighting. [Doc. 34-1 at 150, 157, 335]. And unlike in the trio of cases it cites, Defendant points to no testimony from Plaintiff where he concedes that he would have seen the tent lines had he looked. By contrast, Plaintiff indicated that he tripped over a tent line just as his friends were turning around to warn him of its existence. [*Id.* at 150]. On this record, the Court concludes that a factual dispute exists regarding Plaintiff's comparative fault.

Defendant, to be sure, presents persuasive evidence to suggest that Plaintiff's fault exceeded fifty percent. Plaintiff acknowledged that he was "trying to hurry" to catch the night's shows, and his friends evidently saw the tent lines and were able to avoid tripping over them. [*Id.* at 150, 155]. These facts, among others, could certainly lead a reasonable jury to find that Plaintiff was more at fault than Defendant. Just because a jury could reach this conclusion, however, does not compel the Court to grant summary judgment in Defendant's favor. Because a reasonable jury could reach the opposite conclusion and find Plaintiff less than fifty percent at fault, Defendant's motion for summary judgment on comparative fault grounds is denied.

## IV. CONCLUSION

A mere "scintilla of evidence" is insufficient to survive a motion for summary judgment. *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Based on his description of the tent lines' characteristics and location, Plaintiff has presented more than a scintilla of evidence to survive summary judgment on his premises liability claim, albeit not by much. Defendant presents compelling evidence regarding Plaintiff's degree of fault and the tent lines' lack of dangerousness, but because factual disputes remain on these issues, a jury must resolve them. Accordingly, Defendant's Motion for Summary Judgment [Doc. 31] is **DENIED**.

**SO ORDERED.**

/s/ *Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.
UNITED STATES DISTRICT JUDGE**

15